1-6-1286 MacroPoint v. FourKites. Okay, Mr. Countryman, please proceed. Thank you, and may it please the Court. MacroPoint's claims are patent eligible under Alice's two-step test. The claims pass step one because they are not directed to the abstract idea of tracking freight. The claims instead cover a particular way of monitoring a shipment's location by tracking the location of a device associated with that shipment using location data obtained from a third party rather than the device itself, all while obtaining the appropriate consents. The claims exclude all other ways of tracking freight, including inferior prior art techniques. The claims pass Alice step two for similar reasons. The claims' inventive concept is to obtain the device's location from a third party rather than the device itself, while also securing the appropriate consent and correlating a particular device to a particular piece of freight. I don't understand how this whole consent thing is part of your argument. It doesn't even make sense to me that consent has simply to do with whether or not you'd be violating someone's privacy concerns. I don't see how that is a patentable, innovative, inventive concept. The idea of securing permission so that you don't violate someone's legal rights doesn't seem like an inventive concept to me. So to us, Your Honor, it's taking the entire concept as a whole. It's not any particular piece. It's not just obtaining the consent. Well, that's not what the Supreme Court says you need to do in Alice step two. Step two is looking at whether there is a particular inventive contribution. It's not just looking at everything taken together as a whole. Is it new or different? I wish that were it, but that ain't it. That's not what they said in Alice. That's not consistent with Ultramershal or any number of electric power grid, any number of other cases. It is, is there a particular inventive aspect of the claim? It's not taken as a whole. That's not what step two is about. And each of our cases that have come out on step two have pointed to a particular aspect of the claim that is inventive. So I don't see how securing consent is inventive. Well, here the inventive concept is obtaining the location information from a third party as opposed to the device itself and then doing that. How can that be inventive if a third party has the information in hand and you go up to them and say, can I have access to that information? How is that inventive? It's inventive, for example, because no one else in the prior art was doing it that way. But as I understand it from the specification itself, the E911 system that all the wireless companies had just implemented under FCC mandate had just come into existence. So suddenly this information was available and this patent comes along and says, let's use it. And that was inventive. I mean, no one had been doing it that way before. Well, because the information hadn't been available until the day before yesterday. And that might go to obviousness or it might go to perhaps not anticipation, but it might go to obviousness. But the question here is patent eligibility. And really, do these claims preempt all ways of tracking freight? That's not the question. That's the question that precipitated the Supreme Court's two-part test in Alice. But what's not really left for us is to weigh the preemptive effect of every claim. I mean, that's not what our case law does. That's not consistent with the Alice two-part test. That precipitated the development of the test, but now I'm stuck with the test. And so you end up with claims that are extraordinarily narrow. Look at the ultra-martial claims. Do you see how specific and how many elements they have in them? How is their claim any less specific and arguably narrow than yours, and yet it was found not to be patent eligible? I mean, I don't like the decision, but I'm stuck with it and I've got to apply it. So I don't see daylight between that case and yours on this preemption point. Well, I think some of this Court's recent cases, McCrow, for example, holds that when you're looking at step one, whether the claim is directed to the abstract idea, you do look, you do consider preemption concerns as part of that. Because in McCrow, the question was, did it preempt all rules-based ways of automating lip synchronization? That's not the complete answer, nor is it even the principled test in McCrow. McCrow looks whether the claims are directed to an abstract idea. Here, what do we have? We have correlating freight, which is a manifest, a shipping manifest. We have receiving the first signal, transmitting communications, then receiving communications, transmitting a fourth signal, receiving a fifth signal, and I think it may go up to a sixth. Yeah, it goes to a sixth electronic. So it's transmitting and receiving information. I would even say that the claims are directed to that. I don't think they're even narrow enough to say to freight. I'd say that these claims are directed to transceiving and receiving information. And I think you have to look at the claims as a whole, Your Honor, and particularly under Alice Step 2 in BASCOM, for example. You could say that those claims were— Listen, but don't go to Step 2. Deal with Step 1 first, and that's what I was addressing. Sure. So under Step 1, the district court articulated the abstract idea as tracking freight. And these claims don't cover all ways of tracking freight. They don't cover obtaining the information directly from the driver. They don't cover obtaining the information from a device that's pre-installed in the truck. They don't cover— Well, what does it matter where you're getting the information? You're just sending and receiving information. But the claims aren't just covering any way of sending and receiving information. They're covering sending and receiving information as part of this method for tracking the location of the freight. And they're covering sending and receiving information among particular parties. There's no new way or no limitation as to how you're sending and receiving information. You're focused on from what entity is the information sent or transmitted to or received  That's true. So you're looking at the entity. I'd like to see the claims focus more on how are you transmitting the information and how are you receiving it. And there, if I see limitations that begin to narrow the transmission of information or the receipt of it, then I think we begin to get away from the abstract idea of receiving and sending information. But I don't see that in your claims. And that's true. The claims cover any way of sending and receiving information. Okay. If we stop there. If you can see that point, that that's what the claims cover, then how can that not be an abstract? So even if it is, Your Honor, the claims are still patentable under ALICE Step 2. Okay. Let's go to Step 2. Okay. And you're, I don't see that the inventive or innovative concept here because you're using conventional ways of receiving and sending information. Well here, the inventive concept is where you're sending the information to and who you're getting it from. So getting the location. What used to happen to track freight is that the truck driver would stop to get a coffee, call in and say, okay, I'm in, I'm in Ohio, I'm in Cleveland, exit 24, and then call in later on. So that's, it's always been done that way. There's, and I mean that only in the sense that, that it's conventional. The use of the truck driver's location and the truck driver calling or supplying that information is conventional, but you may have something with respect to the, to the, to the service providers giving the information, AT&T and Sprint, but you didn't invent that. So it was not conventional to get the information from a third party. Our expert established that. I don't think there's any dispute about that. To get it from like AT&T to get the information. Yes, but you didn't invent that. You did not invent what AT&T is doing. Well no one had brought it. You only bought a service that already existed, that's on the shelf, so to speak. No one had applied that existing way of doing it in this particular field or in this particular technology. And so this is just like the, the Bascom, for example, where the filtering software for blocking websites was in the prior art, where the prior art had particular IP protocols. But what the invention was and what Bascom held was it was harnessing those existing technologies in a new way. And that's the same thing we have here. Yes, it's true. Sending and receiving data was known. Yes, it's true that, that, you know, there were consent principles in the prior art, but it was taking all those things and harnessing them in a particular way that's reflected in these claims that doesn't cover many other ways of tracking frame. And we think the Bascom case shows that. We think, you know, as we said in our brief, the concern in a lot of these cases has been twofold. One, are you taking existing human activity and putting it on a computer? That's not the case here. This isn't like the budgeting cases or some of the business method type cases. And the second concern has been, are you claiming a particular result, but without saying how you get to that result? The electric power case. Those are wonderful silos, but they just don't cover all of the case law that is out there. Which of those two silos does Ultramershal fit in? The first, taking pre-existing activity of getting money in exchange for displaying an ad and putting that online. Then, if you're going to simplify Ultramershal to that level of abstraction, then yours is the simple idea of tracking freight. We don't think so, because it's tracking freight by obtaining the location information from a particular party in a way that wasn't done in the prior art. So in the prior art, you got the location information from the driver of the truck. I understand. Cell phones are used to track cell phones. Cell phones are used to track the people carrying cell phones. Is it really a logical leap to say the cell phone is used to track the guy carrying the hands at the time, the freight that's with him? I mean, not only is the cell phone used to track the guy, it's used to track his suit, right? The suit he's wearing. So why is it not used to track the package he's holding, too? How is that somehow some sort of great inventive concept, that it's now not only just tracking him, it's tracking the clothes he's wearing and the package he's holding in his hands? One could have said the same thing in Bascom, where you're putting the filtering software in one place in the network versus the other, or in Amdocs. In Bascom, he said it improved the efficiency of the computer operation. And here you have that, too. By obtaining the location information from the third party, you can simultaneously present information from multiple shippers. Yeah, but that doesn't improve the efficiency of the operation of the computer. That's the exception that was carved out in DDR and proliferated again in Bascom. It's not, does it improve the efficiency of a system? Well, using a general purpose computer always improves the efficiency of a system that was done manually in the past. So it's not just improving the efficiency of the system, the exception is more narrow. It's improving the efficiency of the operation of the actual device, the computer. That's what Bascom and DDR stand for, and as far as I can tell, nothing more. I don't know that Bascom's that narrow, Your Honor, because it talks about, for example, not having to go through the inconvenience of having individual users there install the problem, because you might have users that didn't want to install the blocking software, for example. I think Bascom held that that was part of the technological solution there. And here, likewise, eliminating the need for the pre-installed equipment in the trucks is similarly technological. If there are no further questions, I'll reserve my time. Not a problem. Thank you. Mr. Hood, please proceed. Good morning, Your Honors. May it please the Court. First, the macro-point patents are best directed to tracking freight, as Judge Ranum mentioned. How is that even accurate? I mean, first off, if you want to talk about the highest level of abstraction, they're tracking freight using third-party network data. I mean, you can't just say they're tracking freight. I mean, that just has no tether to the claims if you just say tracking freight, the abstract idea of tracking freight. Every claim could be reduced in that way to its abstract idea, and then step one could never be failed. But yet, we have claims that have survived step one. You know, Enfish, for example, or Refrac Technologies, or something like that. It's called Refrac. It may be in the name of that case. So, I mean, I don't know. I don't see how the abstract idea in this case is tracking freight, as opposed to a specific method of tracking freight using third-party data. And that could very well be, Your Honor. And our point on this is, you know, if we take a look at what we believe the test to be, and that is on ALICE Step 1, to look at the claims as a whole, and consider them as a whole, and look to ascertain what their character as a whole is, when you look at these claims, claim one of the 943 patent, for instance, which was the representative claim that the district court analyzed. The elements of the claim, correlating freight to a cell phone, receiving a request for a cell phone location from the service provider, correlating the cell phone location to freight, reporting the location. As we look at that claim, and the other claims, the 94 claims in these five patents, that's what these boil down to. Their character as a whole, perhaps it is a specific method of tracking freight, but at the end of the day, it's tracking freight. And under ALICE Step 1, no matter how you look at that, from Forkite's perspective, and the various formulations of that test. Under that logic, NFISH is, at the end of the day, simply a method of organizing data. It was a specific rubric for organizing data that had never been utilized before, that resulted in efficiencies across the computer. But, and we held that it was not an abstract idea under the first step of ALICE. But under your logic, it's just a method of organizing data. Your Honor, I believe that is correct. I believe if you look at the claims... I believe it's correct, but we held the opposite. So... Well, I think there are other reasons why NFISH is not directly related to this case. NFISH is a Step 1 case. Understood, Your Honor. And on Step 1 here, our view of these claims, when you look at the claims as a whole, and their character as a whole, and you characterize those, without getting narrowly into the specifics of the claim elements, as we're not supposed to do on Claim 1 under ALICE, these claims are about tracking freight. And that's why our position has been... What are these claims directed to? And that's what our case law says, directed to. These claims, it doesn't seem to me, are directed to an abstract idea of tracking freight. It seems to me these claims are directed to a specific method of tracking freight. I respectfully disagree with that, Your Honor. I think that these claims don't say what they are specifically directed to, other than obtaining the information, correlating the information, and reporting the information. That's absolutely not true. These claims have a lot of limitations, including third-party access of the data relating to location, right? That's correct, Your Honor, yes. And if Claims 2 and 3 are on the table, they require not using GPS to do it, but using one of four articulated, specific ways of that data being transmitted. So, how is that not a very specific way? Well, it's a particular way of tracking freight, Your Honor, with respect to doing that with the third-party data, the consent, and everything else that MacroPoint has pointed to. How these claims differ, though, from the likes of NFISH and other cases that have said, well, no, that is not an abstract idea. This is a fundamental, long-standing business practice, tracking freight. NFISH was not. That was a specific interrelational correlation. Organizing data, which would be your equivalent, is a long-standing business practice. Everybody wants their data to be organized by hand, on the computer, or everywhere else. That's how NFISH was. It's a particular data construct for organizing data. So, I don't know. I'm still struggling with how this is directed to an abstract idea. And our position, Your Honor, is that MacroPoint has attempted to take, they've accused Forkytes of being too broad. And I understand the concern that if you take the lens out too far, you're looking at this in a very broad way. And in a way that would conflict with our other case law, like NFISH. Understood, Your Honor. But under Alice, as we look at these claims, and we see this as different than the NFISH line of cases, that you've got a method of tracking freight, which is a long-standing, fundamental business practice, been around forever, albeit in a specific way that it's claimed in these patents. These elements, in our view, are doable by a human without a computer, which is another formulation of that test. Great. How are these doable by a human without a computer? Everything about these claims scream, you must have a computer. And if we're going to Claim 3, it's articulating particular forms of software, particular software patterns that have to be utilized. How can you do this without a computer? What you're doing, Your Honor, is you're tracking. You are correlating. Figure 2 of the patent specifically talks about how this information is correlated. Using advanced forward link trilateration. I don't know if I'm saying that right. It doesn't seem like something a human's been doing. That is the method of obtaining the location information, Your Honor. That is the way that AT&T or Sprint is locating that cell phone. It's one of the radio frequency location techniques that's specified. Yes, and you're going to tell me this doesn't require a machine, that this is a series of steps that a human being does. Not that, Your Honor. The claim doesn't specify that. What we're talking about is obtaining the location information. How is that done? It is done by Sprint, by AT&T, not by MacroPoint, and it's done via that particular method. It's done via GPS or another method. No, it's not done via GPS. Claim 2 expressly says not GPS, and Claim 3 is dependent on Claim 2. Actually, it's not dependent on Claim 2. I correct myself. Claim 3 is dependent on Claim 1, but it specifies three things which don't include GPS. Anyway, yeah, all right, continue. Tell me why he's not right about what he said about BASCOM under Step 2 because I kind of think he is. I mean, I gave him a hard time about it, but I don't think BASCOM is limited to the efficiency of the machine. I think BASCOM absolutely does discuss other efficiencies that are realized in the system by virtue of the improvement to the inventive concept. Your Honor, and I agree. I think BASCOM is very informative here. The BASCOM decision, of course, talked about the generic computer equipment that was involved, and under the first step of ALICE, that's abstract, at least what was going on there. With respect to ALICE Step 2, the individual elements were found to be preexisting, well-understood conventional activity. With respect to that second aspect of looking at the ordered combination, the filtering software and where it was placed, improved the efficiency and functioning of a computer system specific to those claims. That's the difference here. What we don't have is the computer system, the generic computer components that are shown in the patent here, nothing special or new about them, used in a way that they've always been used. Processors, memories, I.O. buses, all the things that are specified, used in the exact same way that they've always been used, but instead of getting location information from the phone or from the driver, the input to the system is location information from the third party, i.e. AT&T, Sprint, et cetera. But it's a lot more efficient, and it removes... The way freight had traditionally been tracked, just prior to this, was using GPS, and every truck could have a different GPS system, and the coordination of that data across the country for a national company like FedEx or UPS could be logistically very difficult because the coordination of that data could be a bottleneck in their process of tracking freight. And what these people figured out was a new way of tracking freight using pre-existing cell phone data that's already collected by somebody else. So we can just reach out and grab that, and it totally eliminates our need to have to go to the device directly on the truck. It eliminates our need to have to coordinate the software for all the possible different GPS systems because cell phones are ubiquitous. They're everywhere, and there's only a couple of ways of collecting the data, and we can go to those third-party providers and capture the data. I mean, it seems to me that realizes a pretty big efficiency in the tracking freight process, and it is something that was never done before. So why doesn't that satisfy Step 2? I don't think it does, Your Honor, because when you look at this, this is well-understood conventional activity. Obtaining location data... Using a cell phone to track freight? Using a cell phone to track location of the cell phone because what the tracking of the freight is doing in these patents, that's the correlation step. They're taking that information that's obtained from AT&T and Sprint, whoever that cell phone provider is, and they're correlating it via this Figure 2 in the patent and saying, okay, we're saying that freight, or that cell phone that we locate via Sprint, is with that piece of freight on that truck via a simple table. And that's where we're saying that is not an inventive step. That's not like BASCOM. Increasing the efficiency by implementing that table in a generic computer. That's a specific difference here that we don't have that's very different than what was going on in BASCOM vis-a-vis the efficiency. It seems to me that I even have a hard time understanding how the patent tracks freight because what the claims are directed to is tracking the location of the communications device and not freight. It seems to me, I mean, that's the way it used to always work. The driver would call in, but there was just lag time and things of that nature. So here, these claims are set out to track the communications device that's held by the driver. But my old customs days pop back up and you have less than full containers. You have switching of tractor-trader rigs all the time. What happens when the driver switches, drops off a load and picks up a new container? Obviously, something else actually happens. The phone itself doesn't tell you that. It goes back to this, the keeping of the manifest. So is Claim 1 the only claim that was reviewed by the court? That's correct, Your Honor. The district court did a representative claim analysis based on Claim 1 of the 943 patent. That is correct. With respect to your first point, we agree completely, Your Honor. I think the link, if you will, between tracking that cell phone, which is what's going on, and tracking the freight via the location information from the cell phone provider is this correlation. What MacroPoint has said is, we believe that's part of the inventive concept here that saves us under Step 2. That's this basic table. Figure 2 of the patent is this correlation table. Tracking a driver with a specific cell phone on a truck with a piece of freight. Implementing that via standard, ordinary, generic computer components, which MacroPoint hasn't even argued there's some special type of computer used here, is nothing more than doing what has been done, as Your Honor said, for years. Tracking a manifest. With respect to the representative claim, Your Honor, the district court did look just at that one claim, and I think there are 94 claims total across the five patents that suit. As this court has acknowledged, where there are no material differences in the claim language, where what we're doing is changing, you know, one element here and there, moving things around, whether we talk about location data by that cell phone provider has to be tracked via GPS or not, whether the information is displayed on a map or not, things like that. You know, our position on that is that there are no material differences there. With respect to those claims, it was an appropriate analysis that was done by the district court. Did the district court make that finding? Did the district court say he finds there are no material differences between the other 93 claims and this one, and thus I will decide to do it representative, or did he incorrectly suggest that they had agreed to the representative claim? The district court, I don't believe the district court made that expressed statement, Your Honor. I believe the district court, and I think this was in... Footnote. It wasn't a footnote, Your Honor. I believe that's correct. It was in the beginning of his opinion, and I believe... A2. A2 of the... Plaintiff does not dispute claim 1 as representative. So he makes what looks to me to be no fact findings suggesting a similarity between any claims, but rather suggests that plaintiff does not dispute. But when I look at their briefs, I agree, they don't dispute 91 of the claims, but they really clearly dispute claim 2 and claim 3, lay them out and explain the elements and talk about... And this is a brief not only before us, but before the district court. I didn't see you in your brief running away from claim 2 and 3, and I thought you made good arguments about why they didn't save claim 1. So let me just put that out there. But I don't think the district court is right that they agreed to claim 1 being representative. Am I missing some stipulation somewhere that you're aware of in this record where you believe that they were agreeing to the representative nature of claim 1? No, you're not, Your Honor. I think that is absolutely correct. A2 is what the district court said on this particular issue. What I think, if I recall correctly, what was argued in the assessment of the district court at that point, whether the district court misstated that or not, was that the points that MacroPoint tried to look to and suggest as being different, which they've done here in this court, were things like, I think this was in their blue brief at pages 29 to 30, obtaining location information with or without GPS, or causing location information to be displayed visually. They noted the same things in their reply brief. What they didn't do is explain how those are material differences in these patent claims that somehow take these outside the scope of what would be an appropriate, otherwise appropriate, representative claim analysis. Can I ask you, I guess, a version of the question that I asked Mr. Countryman? Yes, Your Honor. The patent makes clear that not among the asserted advances here is the collection by third parties of precisely this information. So if one thinks of 101 as about where is the asserted advance, it can't be in the collection by third parties of this information, which perhaps three years before the priority date wasn't occurring, but by the time the priority date was, all the wireless companies had it because they had to have it. That's what the E901 system was.  My time's up, Your Honor. May I answer the question? I think that's a very apropos point, Your Honor. I think what you make of that is that that cannot be inventive. That aspect of what Macro Point points to as somehow inventive under Section 101 cannot be inventive because it was done by someone else. It's been mandated by the government. That information's been out there for a long time. We're not in a 102-103 analysis, obviously. It would have relevance there as well. But our position is that suggests that aspect of their claimed inventive concept cannot be inventive. Tell me if you don't mind. I'm probably going to keep you here for a few more minutes because I have more questions. So just get comfy. Certainly, Your Honor. As comfy as you can, I guess. I don't really know that there is a strong role for a preemption test as advocated by your opponent. I understand that to be something that you can use at best, as was done in Macro, to reinforce your assessment of the results of the two-part Alice test. I understood preemption to drive the creation of the test as one of the prevalent factors, but not to be some sort of independent, oh, well, this doesn't seem to prevent a lot. It's very narrow. Thus, we're going to let it go. I don't see that standing alone as some sort of independent test. Is that your understanding as well? I absolutely agree, Your Honor. I think that what the Supreme Court said was preemption undergirds this area of law, and we're going to come up with this two-part test, which we are going to have you use to evaluate the issue of preemption. So we go through Alice Step 1, we go through Alice Step 2, and depending on how we come out there, we either have a sufficient preemption concern or we don't. And I agree, and I think the Ariosa decision gets into this too, that it's that two-part test that is directed to the issue of preemption. We go through that two-part test, but we don't have a separate independent, at least under current law, we don't have a separate independent legal analysis on the issue of preemption beyond doing Alice Step 1 and Alice Step 2. And I gave you a lot of difficult questions about abstract idea because I'm struggling with how to articulate the maybe two cases that we've decided where something wasn't determined to be an abstract idea. I mean, do you have some way that you think you can explain to me what it means to be an abstract idea and how to think about that test? Because lots of people seem to be at a loss for it, me included. I feel like there are landmines everywhere that are just data points, and I'm trying not to step on one as I make my way through these cases. And so I mean, do you have any idea how you would articulate what is the test for when something is an abstract idea, keeping in mind that not everything can be? Because we've had at least two cases that went the other way on Prong 1. It's... I thank you for the question, Your Honor, because I've thought about this, and I think all of us that are dealing with this issue... Well, and I appreciate the question because I think it's very difficult, and we look at the way that the test under Step 1 has been evaluated. Well-understood, fundamental long-standing business practices, doable by a human and without a computer. What I see... This doesn't directly answer the question, but I will in a second. Other cases, which I think Your Honor's getting to, that are similar in nature and where they've gone, which somewhat helps and doesn't help. At the end of the day, I try to parse what the Supreme Court said in the Alice case, and what it comes down to for me is some indication that what is here is not concrete and specifically tethered. And that's probably not the best formulation either as I think about it on the fly, but something that is specific and concrete. As I try to, as we do, try to look through the cases and the decisions that this Court and the Supreme Court have issued on this point, there doesn't seem to be a clear line. But I think, for me, at the end of the day, there's got to be some concreteness here. It's got to be more than an abstraction. I try to look at, okay, what is the meaning of the word abstract? In addition to what is the meaning of the word idea? We know the statute talks about ideas, but it's difficult. Other cases, this Court's fair warning versus iatric systems decision in October I think is helpful on this point too. Similar factually, both procedurally and substantively here, with respect to the types of claims and the alleged non-abstract idea there. That's probably the best I can do, Your Honor, because I'm at a loss a bit as well. It's a tough issue. It's a very hard issue. And like in this case, one of the things that jumped out at me is the District Court's decision on Step 1 in the District Court relied on the District Court decision in Enfish and said, hey, this case is linked to Enfish. Then we came along and reversed Enfish. I'm trying to sort of piece all these pieces together. Step 1 I find to be challenging. Step 2 seems a little bit easier. Okay, well, thank you very much for the extra thoughts. I appreciate them. Okay, Mr. Countryman, I'll give you your full 3 minutes of rebuttal time if you need a few minutes more since I went over with Mr. Hood. You can take it, but it's up to you. Thank you, Your Honor. A few points. First, there are technological benefits to this invention. It's about presenting location information for multiple shippers that are using multiple tracking technologies. Okay, where is that in the claims? So that's not recited in the claims itself. Right, so the claim here, it would be satisfied by my having your cell phone location and Judge Moore asking me to work. You assume you're in a truck. If you're carrying something, you look all freight. I think so, Your Honor. I mean, obviously, you know, there would have to be the appropriate consent, the correlating step. All the steps of the claim would have to be met, but perhaps in principle that's true. To address your concern, though, in many of the cases the technological benefit was not necessarily itself recited in the claim. So in BASCOM, for example, the benefit was being able to have individual users customize their web filtering so that each user could block particular websites for that user. That wasn't recited in those claims, and yet the court relied on that as a technological benefit to hold the claims patent-eligible under Step 2. So I think the question is, is a consequence of the claims or as a result of practicing the claims invention... That's because Step 2 asks us to look at the patent as a whole. Is there an inventive concept? But Step 1 directs you to the claims and asks you, are the claims directed to an abstract idea? And I think on that point, here they aren't, because the abstract idea articulated by the district court was track and frame. Let's take a look at this. So the consent. The only reason why the consent is required is because the third-party suppliers won't give you that information unless the person holding the mobile phone allows it, correct? Right. Okay. So that's not necessary. You didn't invent the communication devices. You didn't invent sending and receiving information over the Internet, over wires. So what's left? What's left is a correlation between a cell phone and the freight. And your claims speak to that only in one place. In fact, Claim 1 only deals with freight, uses the word freight three times in a series of claims, or in a series of elements, the transmitting, the correlating, the receiving. It only deals with freight in one place. So when I ask, okay, where are the claims directed to correlating freight with the mobile phone? And that's with the O-List. So you have Driver A carrying furniture from X manufacturer. We'll track his cell phone. There's nothing in here about tracking the freight. But yet that's what you're claiming. To me, when you put all the limitations together, what you have is tracking freight by obtaining the location information from a third party and doing it with the appropriate consent. But you're obtaining the location of the cell phone, not freight, from a third party. But then you're correlating the location of that cell phone to the location of the freight. That I buy and that I see, but I don't think you invented that, and I don't think that's what you're claiming. I don't think you're claiming because that's what the whole world of freight is all about. It's called a manifest. You have a shipper. You have a consignee. You identify the parties to the transaction, the shipping transaction, that have an interest, and you track that. But what was not done before, and I think especially on the posture of this case, where it's a 12B6 motion where the facts have to be assumed in our favor, where we have an expert declaration saying this, no one had gotten the location of that device from a third party before as opposed to the device itself. And this, I think, goes to... Probably with respect to freight, but I would venture to say, though I don't know, and I haven't looked at the record, but I would venture to say that AT&T was selling the location of these cell phone devices to a lot of different people. Law enforcement. Law enforcement or advertisers. I mean, we get these patterns all the time where they're selling the location services. And all you did is you went and bought that, but somewhere, somebody said, cell phone A, this manifest. That's really the only thing left in claim one. So you're stuck with claiming the abstract idea of locating a cell phone. That's how I see it. And I think that's abstract. I disagree. I think, especially with respect to step two, you have to look at the whole claim. You have to look at everything as an ordered combination. And so you're not only correlating the device with the freight, but you're getting the location of that device from a third party with the appropriate consents. And when you look at all that as an ordered combination, this is the first time that anyone had done that. This is the first time. What is it that you're arguing? That you're using inventive steps, meaning steps for an application or steps that have not been used before? Or are you arguing that you reordered conventional systems or conventional steps in a new way that's never been done before? I think it's both. I think, certainly, this had never been done before. I think that's... But you can't say, first of all, that you invented any of this. I think some of the individual pieces were known in the prior... You invented a method, so you reordered, where you cobbled together things that were out there. Well, no one had cobbled them together in this particular way before. That's what you invented, the cobbling together. And although we're saying cobbling together, I mean, that is inventive. I mean, in VASCOM, for example, the patentee there hadn't invented the IP protocols that were used to transmit and receive the data. They hadn't invented the filtering software. But what they had done is they had an idea to harness that existing technology and reorder it in a new way that VASCOM held was inventive by putting the filtering software at the ISP. Similarly here, we're taking that existing technology and we're harnessing it in a new way. Isn't there at least this difference between VASCOM and this? Here, the information has not been moved from one place to another. It's already in the third party's hands and you're just saying, please give it to me. As opposed to essentially, VASCOM is about moving a function from one portion of a network to another portion of a network in such a way that it was assertively inventive and changes the structure and the efficiency of operation of the physical network. I'm not sure what the counterpart here is because this information is sitting already at the AT&T wireless, I don't know what they're called, hubs or something. I think it's moving where you're getting the information from rather than the device or from AT&T. Just as in VASCOM, I think the ISP already had information about which user it was sending and receiving data from, and the question was, can we take that existing information that the ISP has and harness it in a way, combine it in a way that we can improve web filtering technology? I think it's the same thing here. We're using information that AT&T has, but we're using it in a way to improve tracking freight by simultaneously monitoring from multiple shippers, using multiple cell phone tracking technologies, moving the need for pre-installed equipment, doing so in a real-time and continuous manner. No prior art system had accomplished that before, and so at least for purposes of a 101 analysis, we suggest that that is a sufficient inventive concept, especially given the 12b6 posture here and especially given some of the dependent claims, like claims 2 and 3 of the 943 patent, that further narrow it to particular location categories and techniques, so not GPS, for example, some of the other tracking technologies. Is it right, based on the spec, that the location techniques itemized in claims 3, and one of them isn't really a technique, it's just the identifier of the device, right, the CID or something? Yes. Does that pretty much cover the waterfront of how cell phones are found, kept track of their location? I think no, in the sense that it excludes GPS, and cell phones do use GPS, too. With respect to the rest of your question, I don't know the answer to the rest of your question, but it certainly is limited to those particular techniques, so it's independently patentable, and as Judge Moore noted, we never conceded the representativeness of claim 1. Certainly the district court erred by not looking at least at those claims, and not finding them patent eligible for at least that additional reason. Okay, well, Mr. Countryman, we have your argument. I think we need to close this case. Thanks very much.